UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COLEMAN JARRETT, <br> PAULA JARRETT, <br><br> Plaintiffs, <br><br> v. <br><br> WRIGHT MEDICAL TECHNOLOGY, INC. <br> a Delaware corporation, <br><br> Defendant. | No. 1:12-cv-00064-SEB-DML |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS**

This cause is before the Court on Defendant's Partial Motion to Dismiss and Motion to Strike Plaintiffs' Second Amended Complaint [Dkt. 34]. The motions were filed on October 15, 2018, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) and are fully briefed. Plaintiff Coleman Jarrett filed this lawsuit against Defendant Wright Medical Technology, Inc. ("Wright Medical") alleging six causes of action arising under Indiana law: the Indiana Products Liability Act (Count I), breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), fraud (Count IV), and common law punitive damages (Count VI). Plaintiff Paula Jarrett, Mr. Jarrett's wife, alleges a claim for loss of consortium (Count V). We have jurisdiction under diversity of citizenship. For the reasons detailed below, we GRANT IN PART and DENY IN PART Defendant's Partial Motion to Dismiss and Motion to Strike.

1

## Factual Background

Wright Medical is a company incorporated in Delaware with its principal place of business in Arlington, Tennessee. Plaintiffs Coleman and Paula Jarrett are both citizens and residents of the State of Indiana. Wright Medical "design[s], manufacture[s], market[s], distribute[s] and s[ells]" hip replacements. Sec. Am. Compl. ¶ 13. Mr. Jarrett's doctor (who is not a party to this dispute) implanted Wright Medical's Conserve Hip Implant System ("Conserve") into Mr. Jarrett's hip on July 17, 2006, in Indianapolis, Indiana. *Id.* Conserve is a "metal-on-metal hip-replacement product." *Id.* ¶ 10. Wright Medical produced and sold the Conserve hip implant that Mr. Jarrett received. *Id.* ¶ 13.

Mr. Jarrett alleges that nearly four years after his hip replacement (June 29, 2010) he began to experience pain in his hip. *Id.* ¶ 24. In July of 2010, in seeking an explanation for the pain he was experiencing, "learned that his left hip [had] failed due to a gross loosening of the Conserve Cup component and a metal reaction." *Id.* ¶ 25. During Mr. Jarrett's surgery to remove and replace the Conserve Cup his doctor reportedly had noticed that "metal ions [had been] released from the Conserve." *Id.* Since the failure of the implant, Mr. Jarrett has "endured a painful recovery . . . and continues to suffer from injuries of a permanent and lasting nature and discomfort . . . ." *Id.* ¶ 26.

Mr. Jarrett's legal claims include the assertion that Wright Medical "marketed to patients with hip problems that, after being implanted with the Conserve Hip Systems, they could engage in and/or return to a normal, active lifestyle . . . ." *Id.* ¶ 19. However, according to Mr. Jarrett, Wright Medical, "[p]rior to, on, and after July 17, 2006, . . .

knew that the Conserve . . . was defective and harmful to patients and that its components had an unacceptable failure and complication rate." *Id.* ¶ 23. Mr. Jarrett contends that his doctor recommended the Conserve to him based on Wright Medical's affirmations to the doctor "that there were no known issues/ minimal issues" with the Conserve. *Id.* ¶ 20. Moreover, Wright Medical "fail[ed] to warn doctors and patients that the Conserve was defective in that the metal on metal design increased the risk of early failure and revision surgery over conventional hip replacement designs." *Id.* ¶ 34(d).

On January 17, 2012, Mr. Jarrett filed his complaint in this action, which he amended on October 1, 2018. In the motions currently before us, Wright Medical seeks dismissal of Counts II- VI and an order striking the request for attorney fees and prejudgment interest.

## **Legal Analysis**

### I. Standard of Review

Defendant's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). Under that rule, the Court accepts as true all well-pled factual allegations in the complaint and draws all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant's Motion to Strike is based on Federal Rule of Civil Procedure 12(f), which provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Allegations subject to being stricken are those that "bear . . . no possible relation to the controversy or may cause the objecting party prejudice." *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, No. 3:07-cv-66-SEB-WGH, 2010 WL 11569546, at *3 (S.D. Ind. Aug. 27, 2010) (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)). Whether to strike material pursuant to Rule 12(f), is an issue vested in the Court's discretion. *Id.* at *3.

## II. Discussion

### A. <u>Breach of Warranty Claims- (Counts II and III)</u>

Wright Medical seeks dismissal of Mr. Jarrett's breach of express warranty (Count II) and implied warranty of merchantability (Count III) claims, arguing that they cannot be pursued as separate claims because they are subsumed within the Indiana Products Liability Act (Count I). Br. Supp. at 4.

4

An express warranty is "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . ." IND. CODE ANN. § 26-1-2-313(1)(a) (West, Westlaw through 2019 Legis. Sess.). "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id.* at § 26-1-2-314(1).

The Indiana Products Liability Act (IPLA) includes all causes of action "(1) brought by a user or consumer, (2) against a manufacturer or seller, and (3) for physical harm caused by a product . . . ." IND. CODE ANN. § 34-20-1-1 (West, Westlaw through 2019 Legis. Sess.). The IPLA provides "a single cause of action when a consumer seeks to recover from a manufacturer or seller for physical harm." *Cincinnati Ins. Cos. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 4:05 CV 49, 2006 WL 299064, at *2 (N.D. Ind. Feb. 7, 2006).

Wright Medical argues that both of Mr. Jarrett's breach of warranty claims emanate from the personal injuries he suffered due to "the hip implant components at issue." Br. Supp. at 4. Indiana courts recognize that plaintiffs suing for breach of warranty may seek to assert both tort-based causes of action under the IPLA and contract-based claims under the Uniform Commercial Code. *Cincinnati Ins. Cos.*, 2006 WL 299064, at *3; *B&B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1019-20 (Ind. Ct. App. 1991). Tort-based breaches of implied warranty claims are "redundant with strict liability claims," and thus are subsumed under the IPLA. *Cincinnati Ins. Cos.*, 2006 WL

5

299064, at *3. Contract-based claims are not subsumed. *B&B Paint Corp.*, 568 N.E.2d at 1019-20.

The Indiana Supreme Court distinguishes between causes of action under the IPLA and contract law. Claims under the IPLA are for "damage from a defective product or service . . . [that] causes personal injury . . . ." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005). Contract law applies to claims for "damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* For example, in *Hathaway v. Cintas Corporate Services, Inc.*, the plaintiff suffered injuries when sparks from the plasma cutter he was using caught his employer-provided shirt on fire. 903 F. Supp. 2d 669, 671 (N.D. Ind. 2012). The court ruled that plaintiff's breach of warranty claims were tort-based because he was not seeking "recovery for damage to the shirt or any economic loss . . . ." *Id.* at 673. Compare this holding to *Atkinson v. P & G-Clairol, Inc.* where plaintiff sought damages for injuries she incurred in using the defendant's hair care product. 813 F. Supp. 2d 1021, 1022 (N.D. Ind. 2011). The court held in *Atkinson* that plaintiff's express and implied breach of warranty claims were contract-based, even though the plaintiff did not limit her recovery to contract damages which included "the cost of the product . . . [and] economic loss." *Id.* at 1026. The court noted that plaintiff was not required "to delineate in the Complaint [her] damages to make it clear that the sought after damages included the return of the purchase price of the [product]." *Id.*

Our review causes us to conclude that Mr. Jarrett's breach of express warranty and implied warranty of merchantability claims are both contract-based and thus not subsumed under the IPLA. In Count II, Mr. Jarrett alleges that Wright Medical's 2005 press release stated that its "A-CLASS(TM) Advanced Metal minimizes wear through optimized durability, reducing the surface run-in wear to one-tenth the rate experienced by conventional total hip systems . . . ." Sec. Am. Compl. ¶ 50. However, "Defendant's metal-on-metal design actually increases severe complications from wear debris . . . significantly decreas[ing] the survivorship of the device." *Id.* ¶ 52. In Count III Mr. Jarrett alleges that Wright Medical was "a merchant with respect to . . . the Conserve," *id.* ¶ 60 and breached the implied warranty "because the Conserve was dangerous and could not safely be used for its ordinary purpose, *id.* ¶ 63." Mr. Jarrett seeks damages based on both Counts II and III that "includ[e] the cost of the hip replacement and all economic damages stemming from the hip replacement." (*Id.* ¶¶ 58, 68).

The facts of the case before us are distinguishable from *Hathaway*. In *Hathaway*, the plaintiff did not seek damages for harm to the shirt that had caught fire. Here, Mr. Jarrett seeks to recover money damages to replace the defective hip implant and to offset the economic losses that will result from the replacement. These are contract-based claims, and as such are not subsumed under the IPLA.

Alternatively, Wright Medical argues that, even if Counts II and III are contract-based, the claims are time-barred under the applicable statute of limitations and should be dismissed. Br. Supp. at 5. Actions for breach of contract of sale "must be commenced

within four years after the cause of action accrued." IND. CODE ANN. § 26-1-2-725(1) (West, Westlaw through 2019 Legis. Sess.). The "breach of warranty occurs when tender of delivery is made . . . ." *Id.* at § 26-1-2-725(2). However, "where a warranty explicitly extends to future performance of the goods and discovery of the breach . . . [takes time], the cause of action accrues when the breach is or should have been discovered." *Id.*

Indiana courts recognize that "a cause of action accrues upon the occurrence of a legal injury" combined with the harm caused. *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1151 (N.D. Ind. 1983) (concluding that plaintiff's legal injury occurred when her doctor implanted the defendant's contraceptive device). However, in certain cases the statute of limitations may be tolled, including where the future performance exception applies.

Courts have clarified when the future performance exception for a breach of warranty claim tolls the statute of limitations. This exception applies only to express warranties, not implied warranties. *Id.* at 1154 (citing *Stumler v. Ferry- Morse Seed Co.*, 644 F.2d 667, 669 (7th Cir. 1981) (per curiam)). The future performance exception applies only when the express warranties are connected to a "specific time period or future date . . . ." *Stumler*, 644 F.2d at 672 (holding that the warranties were just "promise[s] that the [tomato] seeds w[ould] perform well or perform in a certain manner" and thus were not sufficient for the exception to apply). In *Tolen*, for example, the warranties that the contraceptive would protect plaintiff "[f]or a period of several years" and that "[s]ome women [were] . . . protected . . . for five years or longer" were viewed

8

by the court as not sufficiently explicit. *Tolen*, 570 F. Supp. at 1153-54. This provision in the warranty under review here contrasts with situations where the exception was found to apply, which "reference[d] . . . future time, such as [a] 'lifetime warranty' . . . ." *Id.* at 1154 (quoting *Rempe v. Gen. Elec. Co.*, 254 A.2d 577, 579 (Conn. Super. Ct. 1969)).

Here, the statute of limitations began to accrue when Mr. Jarrett's doctor surgically inserted the Conserve hip implant on July 17, 2006. Sec. Am. Compl. ¶ 13. Mr. Jarrett's original Complaint [Dkt. 1] for the breach of warranty claims was filed on January 17, 2012, more than four years after the product was delivered. Accordingly, Mr. Jarrett's warranty claims were asserted after the limitations period had run, and Mr. Jarrett's contention that the statute of limitations for these claims is tolled by the future performance exception is unavailing. Wright Medical's representation to Mr. Jarrett's doctor was that the Conserve hip implant "would last longer than the 15-20 years that a conventional hip replacement would last," (*id.* ¶ 51) is similar to the warranty language in *Tolen* that the device would last many years. Wright Medical's express warranty to Mr. Jarrett did not reference a future time and was not sufficiently specific for the exception to apply. Therefore, even though these warranty claims are not subsumed by the IPLA which would allow them to survive the motion to dismiss on that basis, they are time-barred. Wright Medical's Motion to Dismiss Mr. Jarrett's breach of express warranty (Count II) and implied warranty of merchantability (Count III) claims is <u>GRANTED</u>.

## B. Fraud- Count IV

Wright Medical next seeks dismissal of Mr. Jarrett's fraud claim (Count IV) under alternative theories: that the claim is either subsumed under the IPLA or not properly pled under Federal Rule of Civil Procedure 9(b). Br. Supp. at 7. The IPLA includes all products liability actions "regardless of the substantive legal theory or theories upon which the action is brought." § 34-20-1-1. Plaintiff concedes that the fraud claim (Count IV) merges into the IPLA claim. Br. Opp'n at 6; Br. Supp. at 7. Though not in dispute between the parties, we explain below why this is true.

Courts have expressed a clear preference for "merging claims into a single IPLA action (whether it is based on theories of manufacturing defect, design defect, failure to warn, or a combination thereof) . . . ." *Cavender v. Medtronic, Inc.*, No. 3:16-CV-232, 2017 WL 1365354, at *4 (N.D. Ind. Apr. 14, 2017). For example, in *Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.*, plaintiff sued defendant for negligence, fraud, and products liability after her husband, who had smoked cigarettes throughout his life, died. No. 1:05 CV 162, 2006 WL 449207, at *1 (N.D. Ind. Feb. 22, 2006). The court held that all of the plaintiff's claims "f[ell] within the purview of the IPLA," requiring the dismissal of the individual claims of fraud and negligence. *Id.* at *3.

Taking the allegations in Mr. Jarrett's Second Amended Complaint as true, as we must, we hold that Mr. Jarrett's fraud claim is subsumed by the IPLA. Mr. Jarrett has alleged that the metal on metal hip implant was defective because, when utilized by active patients, increased wear occurred as well as an increase in metal particles causing

10

various injuries. *Id.* ¶ 77. Mr. Jarrett claims that his injury resulted from Wright Medical's fraud in withholding information about the reported harms generated by metal on metal hip implants, *id.* ¶ 82 despite Wright Medical's having been aware of studies to that effect, *id.* ¶ 77.[1] Mr. Jarrett's fraud allegations are a part of the product liability theory of failure to warn of a product defect which causes physical harm; the fraud claim is thus subsumed by the IPLA. Wright Medical's Motion to Dismiss Count IV in Mr. Jarrett's Second Amended Complaint is therefore <u>GRANTED</u>.[2]

### C. <u>Loss of Consortium- Count V</u>

Mrs. Jarrett alleges in Count V her loss of consortium claim stemming from Wright Medical's actions and the resultant incapacitation to Mr. Jarrett, her husband. Sec. Am. Compl. ¶ 86. Wright Medical seeks to dismiss Count V arguing that this claim as well is subsumed under the IPLA (Count I). Br. Supp. at 4.

Indiana courts have held that loss of consortium claims are derivative of causes of action under the IPLA. *Bailey v. Medtronic, Inc.*, No. 1:17-cv-02314-JMS-DML, 2017 WL 6035329, at *6 (S.D. Ind. Dec. 6, 2017). Loss of consortium claims do not merge into the IPLA for the reason that they do not "consist[] of an effort on the part of . . .

---

[1] This case is distinguishable from *Elward v. Electrolux Home Products, Inc.* in which the court concluded that the fraudulent concealment claim was not merged into the IPLA. 264 F. Supp. 3d 877, 895 (N.D. Ill. 2017). In *Elward* the court noted that the fraudulent concealment claim "d[id] not merely allege a failure to warn that caused physical harm; rather, they also assert that they would have not purchased [defendant's] dishwasher if not for [defendant's] intentional concealment . . . ." *Id.* at 895 n.13.

[2] The Court does not address Wright Medical's alternative contention that Mr. Jarrett's fraud claim is not pled with particularity as required under Federal Rule of Procedure 9(b) because "no independent cause of action for fraud can be maintained . . . ." *Ryan*, 2006 WL 449207 at *3.

consumers, to recover from . . . a manufacturer, for physical harm caused by a product . . . ." *Id.* at *3. A derivative claim is "[a] lawsuit arising from an injury to another person . . . ." *In re Guardianship of French*, 927 N.E.2d 950, 959 (Ind. Ct. App. 2010) (citation omitted). "'[A] cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer.'" *Bd. of Comm'rs v. Nevitt*, 448 N.E.2d 333, 341 (Ind. Ct. App. 1983) (quoting *Arthur v. Arthur*, 296 N.E.2d 912, 913 (Ind. Ct. App. 1973)). A claim that forms the basis for a loss of consortium claim is valid if the foundational claim was not previously dismissed on its merits. *Id.*

Here, Mrs. Jarrett's claim for loss of consortium as a derivative claim is not subsumed under the IPLA. Wright Medical has not yet challenged Mr. Jarrett's IPLA claim on the merits; thus, the derivative claim is still valid and not subject to dismissal. That claim may proceed and Wright Medical's Motion to Dismiss Count V is <u>DENIED</u>.

### D. <u>Common Law Punitive Damages- Count V</u>

Wright Medical also seeks dismissal of Mr. Jarrett's claim for common law punitive damages (Count VI) arguing that Mr. Jarrett did not "allege sufficient factual support for the type of conduct required for such damages under Indiana law." Br. Supp. at 10. "In Indiana, punitive damages may be awarded if the defendant acted with fraud, malice, gross negligence or oppression, and if it appears that the public interest would be served by the deterrent effect of punitive damages." *Stuhlmacher v. Home Depot U.S.A., Inc.*, No. 2:10 CV 467, 2011 WL 1792853, at *6 (N.D. Ind. May 11, 2011) (citation omitted). Punitive damages can be recovered on grounds other than fraud, and thus, a

12

generally stated claim for punitive damages does not have to be pled with particularity. *Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028, 1037 (N.D. Ind. 1981) (citation omitted). However, if the claim for punitive damages is based on the defendant's fraud, such allegations must be pled with particularity, as required by Rule 9(b). *Stuhlmacher*, 2011 WL 1792853, at *6.

Wright Medical argues that, to the extent that Mr. Jarrett's claim for punitive damages is based on fraud, it was not pled with particularity and also includes "the same essential unidentified 'misrepresentations' and allegedly false information . . . as asserted in … Count IV for fraud." Br. Supp. at 10. Wright Medical argues that Mr. Jarrett's fraud claim (Count IV) does not include "any specific statements about the hip implant components at issue that were made directly to Plaintiff or his physicians . . . who made the alleged representations, and the place and method of the allegedly fraudulent communications as required under Rule 9(b)." *Id.* at 8-9. Wright Medical further contends that, to the extent that Count VI is premised on malice or oppressiveness, Mr. Jarrett has pled no more than "a bare conclusory statement without supporting facts." *Id.* at 11.

We begin by addressing Mr. Jarrett's allegations sounding in fraud. To adequately allege a claim for fraud, the plaintiff must "identify the person who made the misrepresentation; the time, place and content of the misrepresentation; and the way in which the misrepresentation was communicated to the pleader." *Stuhlmacher*, 2011 WL 1792853 at *5 (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074,

13

1078 (7th Cir. 1997)). In other words, a plaintiff must adequately allege "the who, what, where, and when of the alleged fraud." *Id.* at *6 (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).

Here, Mr. Jarrett has failed to allege the "who" and "where" elements of the alleged fraud. Mr. Jarrett claims only that Wright Medical's "sales representatives and distributors, represented to Plaintiff's implanting physician, Dr. Parr, that the Conserve was vetted and cleared by the FDA, was safe and effective, was designed for more active, younger patients . . . ." *Id.* ¶ 71. But he has failed to identify the specific sales representatives or distributors who allegedly made these misrepresentations to his doctor. *See North v. Bridgestone/Firestone, Inc.*, No. IP 01-5252-C-B/S, 2002 WL 31689264, at *8 (S.D. Ind. Nov. 20, 2002) (pleading fraud with particularity requires pleading "the identity of the person making the misrepresentation").

While Mr. Jarrett generally alleges that Wright Medical "directed its marketing (via websites, journal ads, brochures . . .) to surgeons and younger, more active consumers who wanted to return to physical activities," *id.* ¶ 75, he has failed to assert the place where any of the allegedly false statements appeared and in what medium—in the marketing materials, in-person conversations, in other communications or publications, or through other means. These allegations are insufficient to adequately plead the "where" of the alleged fraud. *See Lautzenhiser v. Coloplast A/S*, No. 4:11-cv-86-RLY-WGH, 2012 WL 4530804, at *7 (S.D. Ind. Sept. 29, 2012) (dismissing fraud claim in part because the plaintiff "failed to allege any specific reports, press releases, or

advertisements … that would put [the defendants] on any notice of the medium in which these fraudulent statements were made").

Having determined that Mr. Jarrett has pled insufficient facts to properly allege fraud under Rule 9(b), his claim for punitive damages on a theory other than fraud is adequate. Mr. Jarrett claims that Wright Medical "downplayed, understated, and/or disregarded their knowledge of the serious and permanent side effects and risks associated with the use of the Conserve despite available information . . . ." *Id.* ¶ 89. "Defendant failed to provide warnings that would have dissuaded health care professionals from using the Conserve . . . ." *Id.* ¶ 92. He states that "Defendant failed to provide adequate training and instructions to physicians that could have prevented failure of the Conserve causing serious harm . . . ." *Id.* ¶ 93. Such allegations (that Wright Medical knowingly disregarded serious and permanent side effects of the product without adequately warning and training health care professionals) are sufficient, if proven, to support an award of punitive damages. *Cf. Ryan*, 2006 WL 449207, at *5 (noting that plaintiff's complaint "assert[ed] a claim for punitive damages" based on allegations of the defendants' "reckless, wanton, and knowing conduct in manufacturing and supplying a product that was unreasonably dangerous"). Wright Medical's Motion to Dismiss Count VI is therefore <u>DENIED</u>.

### E. Attorney Fees

Wright Medical seeks to have stricken Mr. Jarrett's request for attorney fees, pursuant to Federal Rule of Civil Procedure 12(f). Indiana courts recognize the rule that

"requires statutory authority or an agreement for requiring a losing party to pay the prevailing party's attorney fees." *Collins v. Pfizer, Inc.*, No. 1:08-cv-0888-DFH-JMS, 2009 WL 126913, at *5 (S.D. Ind. Jan. 20, 2009) (holding that the plaintiff did "not identif[y] any legal basis for an award of attorney fees").

Here, there is no allegation that the parties had an agreement requiring the losing party to pay attorney fees. Thus, to be valid, Mr. Jarrett's request for fees must be based on statutory authority. He invokes for that purpose Indiana Code § 26-1-2-721, which provides that, "[i]n all suits based on fraud or material misrepresentation, if the plaintiff recovers judgment in any amount, the plaintiff shall also be entitled to recover reasonable attorney fees . . . ." IND. CODE ANN. § 26-1-2-721 (West, Westlaw through 2019 Legis. Sess.). However, as we have ruled, Mr. Jarrett has no cause of action for fraud separate from his IPLA claim, and the IPLA does not include a provision for attorney fees. *Spangler v. Sears, Roebuck & Co.*, 752 F. Supp 1437, 1450 (S.D. Ind. 1990). Thus, there is no legal basis for Mr. Jarrett's request for attorney fees and it cannot survive. Accordingly, Wright Medical's Motion to Strike Mr. Jarrett's request for attorney fees is <u>GRANTED.</u>

### F. <u>Prejudgment Interest</u>

Lastly, Wright Medical seeks to strike Mr. Jarrett's request for prejudgment damages on the grounds that Mr. Jarrett did not comply with the Indiana Tort Prejudgment Interest Statute (TPIS), Indiana Code § 34-51-4-1, by providing Wright Medical a written offer of settlement within a year of filing the claim. Br. Supp. at 12.

Indiana Code § 34-51-4-1 provides that prejudgment interest "applies to any civil action arising out of tortious conduct." IND. CODE ANN. § 34-51-4-1 (West, Westlaw through 2019 Legis. Sess.). Indiana Code § 34-51-4-6(1) provides that prejudgment interest is not available if, "within one year after a claim is filed in the court, or any longer period determined by the court to be necessary upon showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed." *Id.* at § 34-51-4-6(1). Indiana courts have interpreted the TPIS to be the "exclusive source governing the award of prejudgment interest in cases falling within its ambit." *Kosarko v. Padula*, 979 N.E.2d 144, 149 (Ind. 2012).

Mr. Jarrett seeks an award of prejudgment interest as a form of compensable damages. Sec. Am. Compl. at 26. The TPIS covers Mr. Jarrett's cause of action because the IPLA is a tort-based claim. *See Gunkel v. Renovations, Inc.* 822 N.E.2d 150, 153 (Ind. 2005). However, there is no evidence to show that Mr. Jarrett provided Wright Medical a written settlement offer within one year of filing the action. Therefore, he has failed to meet the requisite elements for recovery under the TPIS. Wright Medical's Motion to Strike Mr. Jarrett's request for prejudgment interest is therefore GRANTED.

### III. Conclusion

For the foregoing reasons, Wright Medical's Partial Motion to Dismiss and Motion to Strike is GRANTED IN PART and DENIED IN PART: Count II (Granted), Count III (Granted), Count IV (Granted), Count V (Denied), Count VI (Denied), Attorney Fees

17

(Granted), Prejudgment Interest (Granted). Count I survives as it was not the subject of the motions considered here.

IT IS SO ORDERED.

Date: _____6/21/2019_____  _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

PAULA JARRETT

Anne A. Gruner
DUANE MORRIS LLP
AAGruner@duanemorris.com

Shayne Hodge
THE MILLER LAW FIRM, LLC
shodge@millerfirmllc.com

J. Scott Kramer
DUANE MORRIS LLP
jskramer@duanemorris.com

Eric Charles Lewis
LEWIS LEGAL SERVICES, P.C.
cmecf.lewislegal@live.com

Tayjes Shah
THE MILLER FIRM, LLC
tshah@millerfirmllc.com

Blake N. Shelby
FROST BROWN TODD LLC (Indianapolis)

bshelby@fbtlaw.com

Robert B. Thornburg
FROST BROWN TODD LLC
rthornburg@fbtlaw.com